UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANDREW ARVEALO,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF NEVADA, *et al.*,<br><br>Defendants. | Case No. 3:15-cv-00407-RCJ-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Robert C. Jones, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is a Motion to Dismiss Under F.R.C.P. 12(B)(6) and Motion for Summary Judgment Based on the Prison Litigation Reform Act filed on behalf of James Greg Cox, Dwight Neven, Sergeant. Sydiongco, Lieutenant Oliver and Correctional Officer Mumpower. (ECF Nos. 69, 69-1, 69-2, 69-3, 70, 70-1, 70-2, 70-3.)[1]

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding with this action pursuant to 42 U.S.C. § 1983. (Pl.'s Am. Compl., ECF No. 64.) The events giving rise to this action took place while Plaintiff was housed at High Desert State Prison (HDSP). (*Id.*) Plaintiff is represented by counsel. This action was originally filed in State court in Clark County, but was subsequently removed by Defendants. (ECF No. 1.)

The Amended Complaint names the following defendants: State of Nevada; State of Nevada Department of Corrections (NDOC); HDSP Warden Dwight Neven; Corrections Officer Trainee Reynaldo-John Ramos; Corrections Officer Jeff Castro; Corrections Officer Isaiah

---

[1] ECF Nos. 69, 69-1, 69-2, 69-3 and 70, 71-, 70-2, 70-3 are identical.

Smith; Corrections Officer Dustin Mumpower; and John and Jane Doe Corrections Officers. (ECF No. 64 at 1, 3.) NDOC Director James Greg Cox, Lieutenant Oliver, and Sergeant Sydiongco were named in the original complaint, but are not named as defendants in the amended complaint. (*See* ECF Nos. 1-4, 64 at 1, 3.) Nevertheless, they have joined in the pending motion. (ECF No. 69.) They acknowledge that they are not listed as defendants in the operative amended complaint, but state that PACER indicated there was no change in the parties. The court relies on Plaintiff's identification of the defendants in the *operative pleading*, and Plaintiff acknowledges he is not proceeding against these defendants (ECF No. 75 at 1-2); therefore, there was no need for Cox, Oliver or Sydiongco to move to dismiss or move for summary judgment. The court will proceed with the motion insofar as defendants Neven and Mumpower are concerned.

Plaintiff alleges that on November 12, 2014, he was housed in the administrative segregation unit (Unit 2B) at HDSP, where Correctional Officer Trainee (COT) Ramos was assigned as a floor officer, and Correctional Officers Castro and Smith were also working. (ECF No. 64 at 4.) After Plaintiff had taken a shower at approximately 8:00 p.m., Castro released Plaintiff from his shower cell, while handcuffed behind his back. (*Id*.) Rather than escort Plaintiff to his cell, Castro permitted Plaintiff to walk alone toward his cell. (*Id*.) He avers that Castro then violated policies and procedures by releasing inmate Carlos Perez from his shower (also handcuffed behind his back) while Plaintiff was still walking to his cell. (*Id*. at 5.) When he was released, Plaintiff claims that Perez ran toward him and attempted to attack Plaintiff from behind. (*Id*.) He states that Ramos, Castro and Smith failed to protect him from attack by another inmate and disregarded a known substantial risk when they violated NDOC policies by allowing two inmates to be out of their cells at the same time. (*Id*.) Perez started kicking Plaintiff, and Ramos, Castro and Smith failed to intervene by attempting to physically separate the inmates, and instead retreated further away, allowing the scuffle to continue. (*Id*.) Ramos, who was in the bubble, went to retrieve a shotgun. (*Id*.) After retreating, Castro and Smith plugged their ears and "maliciously and sadistically" ordered Ramos to shoot Plaintiff. (*Id*. at 6.)

From the bubble above where Plaintiff and Perez were located, Ramos began to shout conflicting orders: "get on the ground" and "stop or I'll shoot." (*Id*.) Ramos then proceeded to shoot Perez and Plaintiff. (*Id*.) Plaintiff was shot three times with live rounds, hitting him in the head, face, left eye, left neck, left arm, back, flank and leg. (*Id*.) Castro and Smith plugged their ears and screamed at Ramos to continue shooting. (*Id*.) Perez's wounds were fatal. (*Id*.)

Plaintiff alleges that the shooting was not executed in a good faith effort to maintain or restore discipline, or for any other legitimate penological reason, and no "less-than-lethal" methods were utilized to stop the fight. (*Id*.)

Plaintiff claims that after he had been shot and was bleeding profusely, Correctional Officer Mumpower denied him medical care for a serious injury and used excessive force in pinning him to the ground and smashing his face to the floor. (*Id*. at 7.)

Plaintiff avers that NDOC policies encourage the use of deadly force in non-lethal situations and led to Plaintiff being shot. (*Id*.)

In his first cause of action, Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 against all individual defendants (Ramos, Castro, Smith and Mumpower) for excessive force, deliberate indifference to a serious medical need, failure to prevent an inmate-on-inmate attack, and failure to stop an inmate-on-inmate attack. (*Id*. at 7-10.)

In his second cause of action, Plaintiff asserts a claim under 42 U.S.C.§ 1983 against the State of Nevada, NDOC and Warden Neven (who is named in his official capacity only) for unconstitutional policies which caused Plaintiff's injuries and damages. (*Id*. at 10-14.) The policies include the policy to deploy deadly force in situations that do not require it, and needlessly shooting inmates with shotguns, noting the findings of the Association of State Correctional Administrators (ASCA) concerning Nevada's use of shotguns in prisons. In addition, Plaintiff alleges that Nevada, NDOC and Neven failed to properly train, supervise or educate its agents, including the individual defendants, about correct procedures on the use of force, separation of inmates and the provision of medical care, permitting defendants to violate Plaintiff's rights. He claims that Nevada, NDOC and Neven failed to effectively screen, hire, train, supervise and discipline the defendant officers.

In his third cause of action, Plaintiff asserts claims for battery under Nevada law against Ramos, Mumpower and the Doe defendants. (*Id*. at 15.) These are based on the allegations that Ramos maliciously deployed deadly force upon Plaintiff when he shot him three times, and when Mumpower and the Doe defendants used their knees and hands to slam Plaintiff's head and face repeatedly into the ground. (*Id*.)

The fourth cause of action is a claim for intentional infliction of emotional distress (IIED) under Nevada law against Ramos, Castro, Smith and Mumpower. (*Id*. at 15-16.) Plaintiff avers that Castro purposefully released him and Perez from their showers at the same time, and Perez then attacked Plaintiff, while Castro knew that Plaintiff and Perez should be kept separate. (*Id*. at 16.) He claims this was done with the intention or reckless disregard for causing Plaintiff emotional distress. (*Id*.) In addition, he alleges that Ramos, Castro and Smith refused to physically separate Plaintiff and Perez, allowing the fight to happen and retreating, while ordering Ramos to deploy deadly force and repeatedly shooting Plaintiff, which was extreme and outrageous and intended to cause Plaintiff to suffer emotional distress. (*Id*.)

In the fifth cause of action, Plaintiff alleges negligent training, supervision and retention under 42 U.S.C. § 1983 against Nevada, NDOC and Neven. (*Id*. at 16-18.) He claims that these defendants failed to use reasonable care in training and supervising Ramos, Castro, Smith, Mumpower and the Doe defendants, such that they failed to take reasonable measures to safeguard Plaintiff's physical welfare. (*Id*.) In addition, they placed Ramos, a trainee, in a position in a bubble with a 12-gauge shotgun loaded with live rounds. (*Id*. at 18.) They failed to provide training on use of less than lethal force, and had a policy of not having guards physically intervene in an altercation between two inmates. (*Id*.)

## II. LEGAL STANDARD

**A. Summary Judgment**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*,

525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

*Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

That being said,

> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

**B. Motion to Dismiss**

Federal Rule of Civil Procedure 12(b) contemplates the filing of a motion to dismiss for the failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). In reviewing the complaint under this standard, the court must accept as true the allegations of the complaint, *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleadings in the light most favorable to plaintiff, and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). This does not apply, however, to "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). "While legal conclusions can provide the framework for a complaint, they must be supported by factual allegations." *Id*. at 679.

Under Federal Rule of Civil Procedure 8(a), "a claim for relief must contain...a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The Supreme Court has found that at a minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Iqbal*, 556 U.S. at 678.

The complaint need not contain detailed factual allegations, but it must contain more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678. It must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)).

The Rule 8(a) notice pleading standard requires the plaintiff to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "Plausibility" is "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citation omitted). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted). Allegations can be deemed "implausible" if there are "obvious alternative explanation[s]" for the facts alleged. *Id*. at 682.

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (dismissed as frivolous); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

### III. DISCUSSION

**A. Mumpower & Exhaustion**

Defendants first argue that Plaintiff's excessive force and deliberate indifference claims against Mumpower should be dismissed for failure to exhaust his administrative remedies. (ECF No. 69 at 6-8.) They argue that Plaintiff did not file a grievance regarding Mumpower or his medical treatment; therefore, the claims should be dismissed. (*Id*.) They contend the dismissal should be with prejudice because the six-month deadline to file a grievance has expired. (*Id*.)

Plaintiff does not object to the dismissal of those claims. (ECF No. 75 at 3.)

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007), *cert. denied*, 135 S.Ct. 403 (Oct. 20, 2014)). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id*. (*overruling in part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which stated that failure to exhaust should be raised in an "unenumerated Rule 12(b) motion").

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168, 1170-71 (citations omitted).

Plaintiff does not dispute that he did not exhaust his excessive force and deliberate indifference claims against Mumpower. Therefore, it is recommended that the excessive force

and deliberate indifference claims against Mumford be dismissed. The dismissal should be with prejudice because, as Defendants point out, the six-month window for filing a grievance has expired.[2] As a result, the court need not reach Defendants' substantive or qualified immunity arguments regarding these claims against Mumpower. Nor will the court address the arguments that Warden Neven cannot be held vicariously liable for Mumpower's conduct with respect to excessive force or deliberate indifference. (*See e.g.* ECF No. 69 at 10.)

**B. Warden Neven**

Next, it is argued that Plaintiff fails to state a claim against Warden Neven because: (1) he cannot satisfy the personal participation requirement; the inadequate hiring, training and supervision allegation is conclusory; the use of force policy must itself be a repudiation of constitutional rights and the moving force of the constitutional violation, but AR 810 is consistent with the Eighth Amendment; Plaintiff concedes that NDOC had a reasonable policy in place to protect against inmate-on-inmate violence; . (ECF No. 69 at 8-10.)

In assessing Warden Neven's arguments, it is helpful to reiterate the claims Plaintiff is pursuing against Warden Neven in the amended complaint, and that Warden Neven is sued in his official capacity only, and not in his individual capacity. (ECF No. 64 at 1.)  Plaintiff alleges that generally Warden Neven is responsible for establishing policies and procedures at NDOC, and that NDOC's policies encourage the use of deadly force in non-lethal situations, which led to Plaintiff's shooting. (*Id*. at 3 ¶ 6, 7 ¶ 25.) The only claims against Warden Neven appear in the second and fifth causes of action.

The second cause of action is against the State of Nevada, NDOC and Warden Neven for unconstitutional policies and procedures. (ECF No. 64 at 10-14.) As was described above, Plaintiff alleges that the State, through NDOC and Warden Neven, promulgated unconstitutional policies that caused injuries and damage to Plaintiff, including policies to deploy deadly force in

---

[2]

*See* Administrative Regulation (AR) 740, http://doc.nv.gov/uploadedFiles/docnvgov/content/About/Administrative_Regulations/AR%20740%20-%20Inmate%20Grievance%20Procedure%20-%20Final%20-%2003072017.pdf , last visited March 20, 2017.

situations that do not require it; and needlessly shooting inmates with shotguns. (*Id*. at 10-11 ¶ 43.) The amended complaint goes on to reference a report by the ASCA concerning Nevada's use of shotguns in its prisons and the practice of needlessly shooting inmates. (*Id*. at 11-12 ¶ 44-51.) The report concluded that elements of the use of force policy were not consistent with nationally accepted standards; that the regulations do not clearly articulate when deadly force may/should be used; the prison in-serve training is minimal and below national standards; of the 208 times a shotgun was discharged between 2012 and 2014, 71 included the use of a birdshot, and 48 of those 71 bird shots were used at HDSP; other correctional institutions in the United States and other developed countries do not employ the use of shotguns in housing units; NDOC policy allows officers to use a shotgun to get inmates to behave; officers are allowed to skip a bird shot off the ground if there is a fight that could cause serious injury (not necessarily involving a weapon) even though the bird shots are unpredictable in trajectory and could cause harm; there are other lethal and non-lethal technological improvements as well as policy and procedure advances that could be implemented in place of this policy; the State of Nevada refused to stop this practice. (*Id*.)

Plaintiff goes on to allege that the de facto policy is to rely heavily on the use of weapons to maintain order. (*Id*. at 13 ¶ 53.) He asserts that the State, NDOC and Neven failed to establish guidelines for and/or train, supervise and educate its agents, including defendants, about correct policies and procedures on the use of force, the use of shotguns, separation of inmates and provision of medical care, putting the defendants in a position to violate Plaintiff's rights. (*Id*. ¶ 54.) He also claims that they failed to effectively hire, screen, train, supervise and discipline its agents, including defendants, permitting them to be in a position to violate Plaintiff's rights. (*Id*. ¶ 55.) He contends that these policies caused his harm. (*Id*. ¶¶ 57-58.)

The fifth cause of action is for negligent training, supervision and retention. (ECF No. 64 at 16-18.) Here, Plaintiff alleges that Defendants had a duty to use reasonable care in training, supervision and retention of its employees, and breached this duty in their negligent and careless training and supervision of Ramos, Castro, Smith and Mumpower. He avers that a causal link exists between this failure and the violation of Plaintiff's rights because a properly trained

correctional officer would not have immediately retreated from an altercation between two handcuffed inmates, and would not have shot live rounds into the faces of two handcuffed inmates who were not posing a threat to the officers or other inmates. He mentions the placement of Ramos, a trainee, in a position where he had access to a 12-gauge shotgun loaded with live rounds. He goes on to state that defendants were negligent and careless in their training and supervision insofar as the policy of never allowing more than one inmate out of his individual cell at the same time was concerned, which allowed Perez to attack Plaintiff. He further contends that they were negligent and careless in the training and supervision of the defendants regarding the failure to provide training on the use of less than lethal force, and the policy of not having officers physically intervene in an altercation between two handcuffed inmates. He contends that the failure to train and supervise caused damage to Plaintiff.

Warden Neven is sued in his official capacity only. Official capacity suits filed against state officials are merely an alternative way of pleading an action against the entity of which the defendant is an officer. *See Hartman v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). "'Suits against state officials in their official capacity therefore should be treated as suits against the State.'" *Id*. (quoting *Hafer*, 502 U.S. at 25)

Plaintiff cannot maintain a complaint against a state or state official sued in his or her official capacity insofar as he seeks to recover *damages*; he may, however, maintain a claim against the State and official capacity defendant with respect to *claims for injunctive relief. See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n. 24 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hartmann*, 707 F.3d at 1127. Plaintiff seeks injunctive relief prohibiting the use of live shotgun rounds in situations that do not require deadly force and other appropriate injunctive relief; therefore, he may proceed against Warden Neven in his official capacity. (ECF No. 64 at 19.)

Contrary to Warden Neven's argument, "[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation." *Id*. (citing *Hafer*, 502 U.S. at 25; *Graham*,

473 U.S. at 166). Instead, "a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief." *Id*. (citing *L.A. Cnty. v. Humphries*, 131 S.Ct. 447, 452, 454 (2010); *Hafer*, 502 U.S. at 25).

"[A] governmental entity is liable under ¶ 1983 only when the entity itself is a 'moving force' behind the deprivation." *Graham*, 473 U.S. at 166 (citing *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)). "[T]hus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Id*. (citations omitted).

Plaintiff has alleged that Warden is responsible for establishing policies and procedures, and references various specific policies concerning the use of force and in particular the use of shotguns, as well as policies related to keeping inmates separated, and officer interference in inmate fights. Plaintiff sufficiently alleges that these policies played a part in the violation of his constitutional rights. In fact, he alleges that these policies caused the violation of his constitutional rights. While Warden Neven maintains that the prison's use of force policy is consistent with the Eighth Amendment, Plaintiff alleges the contrary. Warden Neven relies on *Jeffers v. Gomez,* 267 F.3d 895 (9th Cir. 2001), for the proposition that NDOC's use of force policy is constitutional. In doing so, Warden Neven goes beyond the *allegations* of Plaintiff's amended complaint, which the court takes as true in determining a motion to dismiss for failure to state a claim. Moreover, Warden Neven ignores the fact that *Jeffers* involved the application of a use of force policy in the context of a prison riot, and not a scuffle between two inmates who were each in restraints, as is presented here. In addition, while Warden Neven argues that the policy concerning precluding inmate-on-inmate attack is consistent with the constitution, the court construes Plaintiff's allegations as stating that there was actually a de facto policy of not separating inmates in spite of known dangers. In sum, Plaintiff has sufficiently alleged that the policies were the "moving force" behind the violation of his constitutional rights.

Defendants also argue that Plaintiff's allegation of inadequate screening during hiring, training and supervision is conclusory and should be dismissed. (*Id*. at 8-9, citing *Bd. of Cnty. Comm'r. of Bryan Cnty. V. Brown*, 520 U.S. 397, 412 (1997).) The court disagrees. Plaintiff

specifically alleges that Warden Neven was negligent in the training and supervision of the individual defendants with respect to the use of force policies, the policies concerning keeping inmates separated, interference in inmate attacks, and allowing a trainee to access a shotgun loaded with live rounds. He alleges that this caused his injuries. Therefore, Plaintiff may proceed with this claim as well.

### C. Qualified Immunity

Warden Neven argues that he is entitled to qualified immunity because Plaintiff has failed to plead facts that would establish a constitutional violation. (ECF No. 69 at 12-13.) He argues that there is no case holding that the use of the birdshot is inherently unconstitutional, and even if the force used by Ramos was deadly, even deadly force is constitutionally permissible under certain circumstances. (*Id*. at 13.)

Warden Neven is sued only in his official capacity. While an official sued in his individual or personal capacity may assert personal immunity defenses such as absolute and qualified immunity, "[i]n an official-capacity action, these defenses are unavailable." *Graham*, 473 U.S. at 166-67 (citations omitted). "The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." *Id*. at 167. Therefore, Warden Neven's qualified immunity argument is inapplicable given the capacity in which he is sued.

### D. State Law Claims

First, it is argued that the Nevada law claims against Warden Neven fail because he seeks to hold Neven liable for the actions of Ramos. (ECF No. 69 at 13-14.) The Nevada law claims are not asserted against Neven; therefore, the court need not address this argument.

Second, insofar as the State of Nevada is concerned, it is asserted that Plaintiff failed to invoke a waiver of Nevada's sovereign immunity. (ECF No. 69 at 15.) It is argued that to properly invoke Nevada's waiver of sovereign immunity under Nevada Revised Statute (NRS) 41.031(1), the action must be brought in the name of the State of Nevada in relation of the particular department or agency whose actions are the basis for the suit, which Plaintiff failed to do. (*Id*.) Without this, the court lacks subject matter jurisdiction. (*Id*.)

As to NRS 41.031, Plaintiff argues that the complaint satisfies the statute as it names the State of Nevada through its department of corrections. (ECF No. 75 at 3.) He also asserts that Defendants removed this action to federal court and cannot now claim the court may not entertain the claims against them under the Eleventh Amendment. (*Id.*)

In their reply, Defendants state that not only did Plaintiff fail to properly name the state, e.g., State of Nevada ex. Rel. Nevada Department of Corrections, he did not serve a copy of the complaint on the Attorney General and administrative head of the agency. (ECF No. 77 at 3.) In addition, the State of Nevada and NDOC did not remove the action because they were not parties to the original complaint and have not been served with the amended complaint. (ECF No. 77 at 5.)

In NRS 41.031, the State of Nevada waives its sovereign immunity and that of its political subdivisions (with some exceptions), and provides that an action may be brought against it or any of its political subdivisions, but it must be brought "in the name of the State of Nevada on relation of the particular department, commission, board or other agency of the State whose actions are the basis for the suit." NRS 41.031(1), (2). The summons and complaint in such an action must be served upon the Attorney General and the person serving in the office of administrative head of the named agency. NRS 41.031(2)(a)-(b).

Plaintiff did not specifically name the State of Nevada ex rel. Nevada Department of Corrections, but instead named the State of Nevada and the State of Nevada, Department of Corrections. (ECF No. 64 at 1.) Regardless of whether this conforms to NRS 41.031, Plaintiff did not properly serve the State of Nevada/NDOC.

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). "Rule 4(m) provides to avenues for relief. The first is mandatory; the district court must extend the time for service upon a showing of good cause." *Lemoge v. United States*, 587 F.3d 1188, 1198 (citation omitted). "The second is discretionary; if good cause is not established, the district court may extend time for service upon a showing of excusable neglect."

*Id.* (citation omitted).

By way of Defendants' motion, Plaintiff was put on notice that he had failed to serve the State of Nevada/NDOC. Plaintiff did not address the service failure, and instead argues that the State waived its immunity when it removed this action. As Defendants point out, neither the State of Nevada nor NDOC were named as defendants in the original action filed in State court, and they did not remove the action to federal court. (*See* ECF No. 1-3.) In sum, Plaintiff has presented neither good cause nor asserted any excusable neglect to serve as a basis for extending the time to serve the State of Nevada/NDOC; therefore, they should be dismissed without prejudice pursuant to Rule 4(m).

### E. Official Capacity Claims

Finally, Defendants argue that a complaint cannot be brought against a state or state official acting in his or her official capacity, pointing out that the complaint names Warden Neven in his official capacity. (ECF No. 69 at 16.)

As was alluded to above, it is true that Plaintiff cannot maintain a complaint against a state or state official sued in his or her official capacity insofar as he seeks to recover *damages*; he may, however, maintain a claim against the State and official capacity defendant with respect to claims for injunctive relief. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n. 24 (1997); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013). Plaintiff seeks injunctive relief prohibiting the use of live shotgun rounds in situations that do not require deadly force and other appropriate injunctive relief. (ECF No. 64 at 19.) Therefore, he may proceed with his claim for prospective injunctive relief against Neven in his official capacity. He may not seek damages from Neven.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order as follows:

(1) Summary judgment should be **GRANTED** with respect to the excessive force and deliberate indifference claims against **Mumpower** in Count I, and those claims should be **DISMISSED WITH PREJUDICE**;

(2) The motion should be **DENIED** with respect to Warden Neven except that Plaintiff is precluded from recovering damages from Warden Neven, who is sued only in his official capacity;

(3) The State of Nevada and the Nevada Department of Corrections should be **DISMISSED WITHOUT PREJUDICE** pursuant to Federal Rule of Civil Procedure 4(m).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: March 20, 2017.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE